UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
JILL S. MEYER, M.D.,

                                                                    **MEMORANDUM AND**
                                                                    **ORDER**
                                    Plaintiff,                      15-CV-1496

             -against-

ROBERT McDONALD, Secretary,
Department of Veteran Affairs,
                                    Defendant.
_____x


  **Appearances**

  **Plaintiff**

                                                    Alan E. Wolin
                                                    Wolin & Wolin, Esqs.
                                                    420 Jericho Turnpike
                                                    Suite 215
                                                    Jericho, NY 11753


  **Defendant**

                                                    Rukhsanah L. Singh
                                                    United States Attorney's Office for the Eastern
                                                    District
                                                    271 Cadman Plaza East
                                                    Brooklyn, NY 11201

JACK B. WEINSTEIN, Senior United States District Judge:

I.    Introduction ......................................................................................... 3

II.   Board Certification .............................................................................. 3

   A.   Definition ......................................................................................... 3

   B.   Obtaining Board Certification ....................................................... 4

   C.   Benefits to Patients ........................................................................ 6

   D.   Benefits to Doctors ......................................................................... 6

   E.   Benefits to Employers .................................................................... 7

   F.   Debate within Profession ............................................................... 7

III.  Facts ..................................................................................................... 8

   A.   Plaintiff's Background .................................................................... 8

   B.   Plaintiff's Prior Employment and Prior Protected Activity ....... 8

      1.   Initial Employment .................................................................... 8

      2.   NJ-VA Employment .................................................................... 8

      3.   Plaintiff's NY-VA Application .................................................. 9

   C.   NJ-VA Vacancy Announcements and Plaintiff's Instant Suit ..... 10

   D.   Procedural History ......................................................................... 11

IV.   Law ....................................................................................................... 13

   A.   Standard of Review ........................................................................ 13

   B.   Discrimination and Retaliation Claims under the ADEA ........... 13

      1.   Plaintiff's *Prima Facie* Claim .................................................. 14

      2.   Defendant's Legitimate, Non-Discriminatory Reason ............ 15

      3.   Pretext ........................................................................................ 15

V.    Application of Law to Facts ................................................................ 15

   A.   Plaintiff's *Prima Facie* Claim ...................................................... 15

      1.   Age Discrimination .................................................................... 15

      2.   Retaliation .................................................................................. 19

   B.   Defendant's Legitimate, Non-Discriminatory Reason ................ 26

   C.   Pretext ............................................................................................. 28

VI.   Conclusion ........................................................................................... 29

# I. Introduction

This decision holds that without violating age discrimination protections, an employer may give substantial weight in hiring to board certifications of medical candidates, or in advertising job openings.

Plaintiff Jill S. Meyer brings this action pursuant to the Age Discrimination in Employment Act ("ADEA").  Alleged are age discrimination and retaliation.  She is a psychiatrist formerly employed by the United States Department of Veterans Affairs ("agency" or "VA").  Defendant is the United States Secretary of the VA, David Shulkin.  Formerly the VA head was the named plaintiff, Robert McDonald.  Plaintiff's claims arise from her non-selection for a position of staff psychiatrist at the VA New Jersey Health Care System ("NJ-VA").

Defendant moves for summary judgment, arguing that: (1) plaintiff cannot establish a *prima facie* claim of age discrimination or retaliation; and (2) defendant had a legitimate non-discriminatory and non-retaliatory reason for not selecting plaintiff for the position of staff psychiatrist at the NJ-VA – she was not board certified, but the persons selected were.

Defendant's motion for summary judgment is granted.

# II. Board Certification

## A. Definition

Board certification is regulated by numerous board certifying bodies in the United States, including the American Board of Medical Specialties ("ABMS") and the American Board of Physician Specialties ("ABPS").  "Obtaining a medical license sets the minimum competency requirements to diagnose and treat patients, it is not specialty specific.  Board Certification demonstrates a physician's exceptional expertise in a particular specialty and/or subspecialty of medical practice."  *See Board Certification and Maintenance of Certification*, ABMS,

http://www.abms.org/board-certification/. "Patients, physicians, health care providers, insurers, and quality organizations look for these markers as the best measure of a physician's knowledge, experience and skills to provide quality health care within a given specialty." *Id. See also Board Certification and Maintenance of Certification*, ABMS, http://www.abms.org/board-certification/; *Physician Board Certification Defined*, ABPS, http://www.abpsus.org/physician-board-certification-defined.

### B. Obtaining Board Certification

The process for obtaining board certification for a specific area of medicine "involves a rigorous process of testing and peer evaluation that is designed and administered by specialists in the specific area of medicine." *Id.* Dr. Maureen Kaune, an employee of defendant in the instant case, testified that board certification through the American Board of Psychiatry and Neurology, Inc. ("ABPN"), which is a Member Board of the ABMS, is "a very rigorous process," which allows a board certified doctor to be "recognized as one of those experts in [his or her] field." *See* Decl. of Rukhsanah L. Singh in Supp. of Def.'s Mot. for Summ. J., August 3, 2016, ECF No. 26 ("Singh Decl."), at Ex. P, ECF No. 26-2 at 98:8-99:13.

The minimum eligibility requirements for board certification differ among various member boards. The ABMS requires that doctors – after completing their college premedical education, medical school education, and three to five year residency training program – "[p]rovide letters of attestation from their program director and/or faculty" and "[p]ass a written and, in some cases, an oral examination created and administered by an ABMS Member Board." *Steps Toward Initial Certification and MOC*, ABMS, http://www.abms.org/board-certification/steps-toward-initial-certification-and-moc/. *See also* Pl.'s Statement on the Issue of

Board Certification, Dec. 14, 2016, ECF No. 41 ("Pl.'s Suppl. Mem."); Suppl. Mem. of Law in Further Supp. of Def.'s Mot. for Summ. J., Dec 23, 2016, ECF No. 42 ("Def.'s Suppl. Mem.").

Doctors who wish to obtain board certification in psychiatry through the ABPS must take a written and an oral exam. *Board of Certification in Psychiatry*, ABPS, http://www.abpsus.org/psychiatry. In order to be eligible for these tests, a doctor must, among other requirements, be in compliance with the ABPS's Code of Ethics, have completed an accredited residency in psychiatry, submit letters of recommendation, provide a document report of a minimum of 10 psychiatry cases which the applicant had the lead role in managing, consent to a background check, and pay relevant fees. *Psychiatry Eligibility*, ABPS, http://www.abpsus.org/psychiatry-eligibility.

In addition to obtaining board certification for an area of medical specialty like psychiatry, doctors can also take subspecialty exams, which are subject to their own eligibility requirements. *Taking a Subspecialty Exam*, ABPN, https://www.abpn.com/become-certified/taking-a-subspecialty-exam/.

Once a doctor has obtained a board certification, she must periodically recertify "by participating in a robust continuous professional development program." *Steps Toward Initial Certification and MOC*, ABMS, http://www.abms.org/board-certification/steps-toward-initial-certification-and-moc/. Doctors board certified in psychiatry through the ABPS must complete Continuing Medical Education hours to maintain certification. *Psychiatry Recertification*, ABPS, http://www.abpsus.org/psychiatry-recertification. The ABPN requires a recertification examination "at least once every 10 years for each certification." *Program Requirements*, ABPN, https://www.abpn.com/maintain-certification/maintenance-of-certification-program/program-requirements/.

### C.     Benefits to Patients

Board certification can benefit patients because it provides strong evidence that a doctor

has stayed up-to-date with medical standards, patient care, and medical ethics.  *See, e.g.*, *About*

*Board Certification*, ABMS, http://www.certificationmatters.org/about-board-certified-

doctors/about-board-certification.aspx; *Physician Board Certification Defined*, ABPS,

http://www.abpsus.org/physician-board-certification-defined.

Board certified physicians must have demonstrated their ability to offer reasonable and

safe treatment plans that comply with current clinical standards.  This allows patients to make

more informed choices when selecting healthcare providers.  Def.'s Suppl. Mem. at 4; *see* Decl.

of Saila B. Donepudi, M.D. in Supp. of Def.'s Suppl. Mem., Dec. 7, 2016, ECF No. 42-2

("Donepudi Decl. 2"), at ¶ 10.  The required Maintenance of Certification program ensures that

doctors keep up with ever-changing industry standards.  Def.'s Suppl. Mem. at 3-4.

Because board certified doctors are also evaluated on grounds of professionalism, they

instill confidence about their ethical values in their patients.  Def.'s Suppl. Mem. at 4-5;

Donepudi Decl. 2, at ¶ 10.   Having physicians known to be highly trained may put a patient at

ease during a time of stress, and help cultivate a stronger physician-patient relationship.

### D.     Benefits to Doctors

Doctors may benefit from board certification because the classification indicates that a

doctor has qualified knowledge in a particular field.  Def.'s Suppl. Mem. at 5; Donepudi Decl. 2

¶ 9.  This may increase a physician's value; certification signals to a patient and employer that a

doctor has the requisite knowledge to successfully complete the certification testing process.

Rebecca Clay, *Gaining Specialty Certification,* AMERICAN PSYCHOLOGY ASSOCIATION,

http://www.apa.org/gradpsych/2010/03/specialty-certification.aspx.

The requirements doctors must meet to maintain certification can safeguard against outdated treatment methods. *Mission and History*, ABPN, https://www.abpn.com/about/mission-and-history/. This creates a unified standard and measure of evaluating peer competency. Rebecca Clay, *Gaining Specialty Certification,* AMERICAN PSYCHOLOGY ASSOCIATION, http://www.apa.org/gradpsych/2010/03/specialty-certification.aspx.

Board certified physicians may earn a higher salary based on their qualifications. Employers such as the NJ-VA offer higher compensation for board certified physicians as compared to non-board certified physicians. Def.'s Suppl. Mem. at 5; 38 U.S.C. § 7431(c)(4)(D) (requiring the determination of the amount of market pay of a physician employed by the VA to consider board certification).

E.      **Benefits to Employers**

Because board certification is based on nationally recognized standards of competent medical treatment, employers can benefit from hiring board certified doctors. Def.'s Suppl. Mem. at 6. Certification indicates to patients that the employer will provide treatment by highly qualified physicians who maintain current medical knowledge. Some employers require board certification for employment. *Id.*

F.      **Debate within Profession**

Plaintiff correctly points out that it is "debatable whether board certification is related to better care." Pl.'s Suppl. Mem. at 2. But the court is not determining whether board certification is in fact preferable for patients, doctors, and employers. It is deciding whether an employer may reasonably conclude that retaining a board certified physician provides substantial benefits to itself and its patients.

### III.   Facts

#### A.   Plaintiff's Background

Plaintiff was born in February 1953.  Am. Compl., June 25, 2015, ECF No. 8 ("Am.

Compl."), at ¶ 17; Def.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule

56.1, July 29, 2016, ECF No. 21-2 ("Def.'s Rule 56.1 Statement"), at ¶ 1.  She was 59 years old,

protected by the ADEA, when the VA chose not to hire her.

In 1981, plaintiff received a medical doctor degree from the University of Dominica.

Def.'s Rule 56.1, at ¶ 3.  She is licensed to practice medicine in New York, New Jersey,

Maryland, Nebraska, and Pennsylvania.  Def.'s Rule 56.1, at ¶ 4.  She is not board certified in

any area of medicine.  *Id.* at ¶ 5; Pl.'s Statement of Undisputed Material Fact Pursuant to Local

Civil Rule 56.1, Sept. 21, 2016, ECF No. 31 ("Pl.'s Rule 56.1 Statement"), at ¶ 5.

#### B.   Plaintiff's Prior Employment and Prior Protected Activity

##### 1.   Initial Employment

Plaintiff has been employed as a psychiatrist by the VA for many years in a number of

states.  Am. Compl. at ¶¶  18-20.  She worked at the VA Medical Center in Minnesota from July

1992 to June 1993, the VA Medical Center in Ohio from June 1994 to December 1994, and the

NJ-VA from December 1994 to February 2004.  *Id.*; Def.'s Rule 56.1 Statement at ¶¶ 6-10.

##### 2.   NJ-VA Employment

During her employment at the NJ-VA, plaintiff submitted multiple complaints against the

NJ-VA to her employer and to the Equal Employment Opportunity Commission ("EEOC"),

including allegations of equal pay violations, hostile work environment, unfair disciplinary

actions, and discrimination based on disability, race, religion, sex, and reprisal.  Am. Compl. at

¶¶ 22-31; Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3.  One of her former official

complaints to the EEOC included a claim of age discrimination. Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3.

In several of these complaints, she named two of her supervisors who later made the hiring decisions that form the basis of the instant case – Associate Chief Miklos Losonczy, M.H., B.S. and Supervising Psychiatrist Maureen Kaune, M.D. Am. Compl. at ¶¶ 22-31; Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3; Def.'s Rule 56.1 Statement at ¶¶ 11-13; Decl. of Alan E. Wolin in Opp'n to Def.'s Mot. for Summ. J., Sept. 21, 2016, ECF No. 32 ("Wolin Decl."), at Ex. 3. In one complaint, plaintiff charged that the agency was "out to get" her. Am. Compl. at ¶¶ 25-27; Wolin Decl. at Ex. 12, Sept. 21, 2016, ECF No. 32-12. Three of the five formal claims plaintiff filed with the EEOC led to a settlement under which plaintiff resigned from her position with the NJ-VA. Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3.

### 3. Plaintiff's NY-VA Application

In January 2009, plaintiff applied for and was offered a psychiatrist position at the VA Medical Center in Syracuse, New York ("NY-VA"). Pl.'s Rule 56.1 Statement at ¶ 14; Am. Compl. at ¶ 40. When her offer for the position was rescinded, she filed an equal employment opportunity ("EEO") complaint and alleged that her non-selection for the vacancy was the result of discrimination based on her age, national origin, religion, and prior protected activity. Pl.'s Rule 56.1 at ¶¶ 14-15; Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3. The complaint was decided in favor of the NY-VA: the VA issued a decision, which was affirmed by the EEOC, that plaintiff had failed to state a *prima facie* case and that the agency had proffered a legitimate, non-discriminatory reason for its decision. Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3; Singh Decl. at Ex. CC, Aug. 3, 2016, ECF No. 26-5; Pl.'s Rule 56.1 at ¶¶ 16-17.

In December 2012, plaintiff filed a complaint in the Eastern District of New York against the agency regarding her non-selection for the employment position, alleging that defendant's retraction of the job offer was motivated by employment discrimination based upon age, religion, and retaliation for prior protected activities. The court concluded that she had failed to state a *prima facie* case of discrimination and granted defendant's summary judgment motion dismissing the action. *Meyer v. Shinseki*, No. 12-CV-6337, 2016 U.S. Dist. LEXIS 100528 (E.D.N.Y. July 28, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 138418 (E.D.N.Y. Sep. 30, 2016).

### C. NJ-VA Vacancy Announcements and Plaintiff's Instant Suit

In 2011 and 2012, the NJ-VA had a vacancy for a staff psychiatrist, which was listed under Vacancy ID No. 517141. Pl.'s Rule 56.1 Statement at ¶ 19. The vacancy was posted under two vacancy announcements: first, Vacancy Announcement JL-11-3559, and later, Vacancy Announcement JL-12-3559 (later renamed as BH-12-JLI-517141-MHC), which included a second vacancy for a staff psychiatrist position. *Id.* at ¶¶ 20-21. The NJ-VA sought to hire two staff psychiatrists to fill Vacancy ID No. 517141. *Id.* at ¶ 22.

Plaintiff applied for both positions under the two separate vacancy announcements. *Id.* at ¶¶ 31-32. She submitted her first application to Vacancy Announcement JL-11-3559 in September 2011. *Id.* Because this position did not need to be filled from applications sent for a specific vacancy announcement, plaintiff's initial application "rolled over" into the selection process for the two vacancies announced in Vacancy Announcement JL-12-3559, for which plaintiff submitted additional information in 2012. *Id.* Plaintiff was not selected for either position. Am. Compl. at ¶¶ 39, 44; Def.'s Rule Statement 56.1 at ¶ 33; Singh Decl. at Exs. F-G, Aug. 3, 2016, ECF No. 26-1.

Dr. Losonczy was the selecting official for NJ-VA staff psychiatrist vacancies. Def.'s Rule 56.1 Statement at ¶ 24. He directed Dr. Kaune and Dr. Saila Donepudi, M.D., to form a selection panel to review and interview candidates for the Vacancy ID No. 517141. *Id.* at ¶¶ 24-25, 33. The panel, consisting of Drs. Kaune and Donepudi, decided not to select plaintiff for an interview and instead interviewed three candidates who were board certified, and who were born in 1972, 1957, and 1964, respectively, all younger than plaintiff, who was born in 1953. *Id.* at ¶¶ 33, 36. The panel ultimately recommended, and Dr. Losonczy chose, the youngest candidate, who was board certified and 39 years of age at the time of the offer. *Id.* at ¶ 37; Hr'g Tr., Feb. 16, 2017 ("Hr'g Tr."), at 7:23-8:2. That candidate declined the offer shortly before she was to begin working at the NJ-VA. Def.'s Rule 56.1 Statement at ¶ 38.

After the candidate declined, Dr. Kaune and Dr. Donepudi were no longer involved in the selection process. In 2012, Dr. Losonczy independently selected two board certified psychiatrists to fill the two vacancies at the NJ-VA, who were 31 and 38 years of age at the time of their selection, when plaintiff was almost 60. *Id.* at ¶¶ 39-41. Def.'s Rule 56.1 Statement at ¶ 41; Singh Decl. at Exs. I-K, Aug. 3, 2016, ECF No. 26-1.

Throughout the hiring process, the responsible managing officials were over the age of 40: Dr. Kaune was born in 1961, Dr. Donepudi was born in 1966, and Dr. Losonczy was born in 1946. Def.'s Rule 56.1 Statement at ¶¶ 43-45.

### D.    Procedural History

On May 10, 2012, Plaintiff filed a formal written EEO complaint with the VA when the NJ-VA failed to appoint her to the position of psychiatrist under Vacancy Announcement JL-12-3559. Def.'s Rule 56.1 Statement at ¶ 46; Singh Decl. at Ex. U, Aug. 3, 2016, ECF No. 26-3. On June 5, 2012, Plaintiff sought to amend her EEO complaint to include her non-selection for

the position of psychiatrist under Vacancy Announcement BH-12-JLI-517141-MHC (the renamed Vacancy Announcement JL-12-3559). Def.'s Rule 56.1 Statement at ¶ 47; Singh Decl. at Ex. V, Aug. 3, 2017, ECF No. 26-3.

In July 2012, the agency accepted plaintiff's claims and commenced an investigation. Def.'s Rule 56.1 Statement at ¶ 48. In February 2014, the VA EEO issued an Order Entering Judgment in favor of the VA, finding that plaintiff failed to make out a *prima facie* claim of retaliation and that the agency had offered legitimate, non-discriminatory reasons to rebut plaintiff's discrimination claims. *Id.* at ¶ 49; Singh Decl. at Ex. X, Aug. 3, 2016, ECF No. 26-3. Plaintiff appealed the decision, which the agency affirmed on December 24, 2014. Def.'s Rule 56.1 Statement at ¶ 51; Singh Decl. at Ex. Z, Aug. 3, 2016, ECF No. 26-3. The decision informed plaintiff of her right to file a civil action within 90 days from the date of its receipt. Singh Decl. at Ex. Z, ECF No. 26-3.

On March 23, 2015, plaintiff filed a complaint initiating the instant action. Compl., March 20, 2015, ECF No. 1. She alleges that the hiring panel discriminated against her on the basis of her age in violation of the ADEA: the agency generally prefers to hire younger applicants and hired an individual younger than she was for each available position. *See* Am. Compl. She also alleges that Dr. Losonczy and Dr. Kaune retaliated against plaintiff when they did not select her for the positions, because plaintiff had filed several formal complaints against the VA – naming Dr. Losonczy and Dr. Kaune – prior to submitting her applications. *Id.*

Defendant moves for summary judgment, arguing that (1) plaintiff has failed to state a *prima facie* case of circumstances that would give rise to an inference of age discrimination or discriminatory retaliation; (2) the agency did not discriminate against plaintiff based on her age and had a legitimate, non-discriminatory reason for not hiring plaintiff – her lack of board

certification; and (3) hiring candidates with a superior qualification was not pretext for discrimination.

## IV.    Law

### A.    Standard of Review

Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 247 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).

### B.    Discrimination and Retaliation Claims under the ADEA

Under the ADEA, an employer shall not "fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age" and shall not discriminate against an applicant for employment because that applicant "has opposed any practice made unlawful by this section, or because such . . . applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(a)-(d).

ADEA discrimination and retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jetter v. Knothe Corp.*, 324 F.3d 73, 75-76 (2d Cir. 2003); *see also Chan v. Donahoe*, 63 F. Supp. 3d 271, 294-95. "Under this framework, the evidentiary burden shifts between the parties, but the ultimate burden of proving discrimination remains with the plaintiff." *Farulla v. New York Sch. Const. Auth.*, 277 F. Supp. 2d 140, 146 (E.D.N.Y. 2003).

### 1. Plaintiff's *Prima Facie* Claim

First, plaintiff must prove a *prima facie* case by a preponderance of the evidence. *Id.* The burden of establishing a *prima facie* case under the ADEA is "minimal," *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (regarding employment discrimination) and "*de minimis*," *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (regarding retaliation).

### a) Age discrimination

An age discrimination claim requires a showing that: (1) plaintiff belonged to a protected class; (2) she was qualified for the employment position; (3) she suffered an adverse employment action; and (4) this adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Chan*, 63 F. Supp. 3d at 293; *Hall v. N. Bellmore Sch. Dist.*, 55 F. Supp. 3d 286, 295 (E.D.N.Y. 2014) (these elements apply when a defendant employer is assessing applicants for hire).

### b) Retaliation

Plaintiff establishes a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Chan*, 63 F. Supp. 3d at 295 (quoting *Hicks*, 593 F.3d at 164-65).

### 2. Defendant's Legitimate, Non-Discriminatory Reason

Once plaintiff has established a *prima facie* case of age discrimination or retaliation, the burden of proof shifts to defendants to offer, by a preponderance of the evidence, a "legitimate non-discriminatory reason" for the employment decision "through the introduction of admissible evidence." *Hernandez*, 100 F. Supp. 3d at 255 (internal quotation marks and citation omitted); *see also Chan*, 63 F. Supp. 3d at 294 ("It is a burden of production, not persuasion; it can involve no credibility assessment." (internal quotation marks and citation omitted)).

### 3. Pretext

If defendant is able to meet this burden, plaintiff must produce evidence that defendant's proffered reason is a pretext for discrimination. *Hernandez*, 100 F. Supp. 3d at 255; *see also U.S.P.S. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("In short, the district court must decide which party's explanation of the employee's motivation it believes.").

## V. Application of Law to Facts

### A. Plaintiff's *Prima Facie* Claim

#### 1. Age Discrimination

Plaintiff meets the first three requirements of the four-prong test to establish a *prima facie* age discrimination claim.

### a) Protected Class

As a 59-year-old applicant, she falls within the class of people protected by the ADEA, which is individuals who are at least 40 years of age. 29 U.S.C. § 631(a).

### b) Qualifications

Plaintiff has provided evidence demonstrating that she was qualified for the position. The second vacancy posting, Vacancy Announcement JL-12-3559, called for applicants who are United States citizens, hold the degree of doctor of medicine or an equivalent degree, and have a license to practice medicine or surgery. Wolin Decl. at Ex. 18, Sept. 21, 2016, ECF No. 32-18. She met these requirements: in her application, she truthfully stated that she is a United States citizen, holds a doctoral degree in medicine as a psychiatrist, and is licensed to practice medicine. Wolin Decl. at Ex. 17, Sept. 21, 2016, ECF No. 32-17. Her resume demonstrates that she has significant experience, both as a staff psychiatrist for various state branches of the agency and in other clinic settings. Singh Decl. at Exs. D-E, Aug. 3, 2016, ECF No. 26-1. *See Farulla*, 277 F. Supp. at 147 (E.D.N.Y. 2003) (evidence including plaintiff's resume and five letters of recommendation from colleagues and supervisors were sufficient to demonstrate her qualifications); *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) ("[Plaintiff] only needs to demonstrate that she possesses the basic skills necessary for performance of the job.") (internal quotation marks, alterations, and citation omitted).

### c) Adverse Employment Action

Plaintiff established that she suffered an adverse employment action. She applied for two positions for which she was qualified and was rejected for both. Pl.'s Rule 56.1 Statement at ¶ 42. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the

terms and conditions of employment." (internal quotation marks and citation omitted)); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (defining adverse employment action broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." (internal citation omitted)).

### d) Inference of Discrimination

Plaintiff has not established that this adverse employment action occurred under circumstances giving rise to an inference of illegal discrimination. That inference can be drawn from "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Meyer v. State of N.Y. Office of Mental Health*, 174 F. Supp. 3d 673, 687 (E.D.N.Y. 2016), *aff'd*, 16-CV-1163 (2d Cir. Mar. 10, 2017). Plaintiff has not offered any evidence from which a rational factfinder could determine that defendant's failure to hire plaintiff was based on age discrimination.

When the person who allegedly discriminated against plaintiff is a member of the same protected class as plaintiff, the court applies an inference against discrimination. *Palak v. St. Francis Hosp.*, No. 14–CV–4383, 2015 WL 3682805, at *8 (E.D.N.Y. June 12, 2015) ("[A]n inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class. . . . In other words, if a decision maker is in the same protected class as plaintiff, claims of discrimination become less plausible." (internal quotation marks, alterations, and citations omitted)), *appeal dismissed* (Dec. 23, 2015); *see also Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993)

(dismissing age discrimination claims where the employees responsible for plaintiff's termination were the same age as or older than plaintiff); *Drummond v. IPC Int'l., Inc.,* 400 F. Supp. 2d 521, 532 (E.D.N.Y.2005) (same). That inference is not dispositive, since members of a protected class can discriminate against other members of that class, but it creates an additional hurdle that plaintiff must overcome. *Palak*, 2015 WL 3682805, at *8. In the instant case, hiring decisions were made by Dr. Losonczy, who was born in 1946, Dr. Donepudi, who was born in 1966, and Dr. Kaune, who was born in 1961. Pl.'s Rule 56.1 Statement at ¶¶ 43-45. All three employers were over the age of 40 – and therefore members of the same protected class as plaintiff – when they made the decision not to hire her.

An inference against discrimination is appropriate when the individual hired to replace plaintiff alleging discrimination is within the same protected class as plaintiff. *Fleming v. MaxMara USA, Inc.*, 371 F. App'x. 115, 117 (2d Cir. 2010) (affirming summary judgment in favor of defendant employer and finding no inference of discrimination where an African American female plaintiff who alleged termination based on race was replaced by another African American female); *Rodriguez v. N.Y.C. Health & Hosps. Corp.*, No. 14-CV-4960, 2015 WL 5229850, at *5 (E.D.N.Y. Sept. 8, 2015) ("It is extremely difficult, if not practically impossible to establish discrimination where, as here, plaintiff was passed over so an employer can hire another member of plaintiff's same protected class." (internal quotation marks and citation omitted)). The inference is not dispositive, but plaintiff must overcome it in order to establish an inference of discrimination.

In the instant case, two of the candidates defendant interviewed to fill the first vacancy were in plaintiff's protected class, but the three individuals who were offered the position – two of whom accepted – were under the age of 40 at the time of selection. Pl.'s Rule 56.1 Statement

at ¶¶ 36-41.  Because the candidates who were ultimately hired are not in plaintiff's protected class, defendant is not entitled to this inference against discrimination.  But the mere fact that defendant filled the position with two individuals outside of plaintiff's protected class is itself insufficient for plaintiff to meet her burden.

There is no other evidence in the record that defendants did not interview and hire plaintiff because of her age.  Plaintiff's allegation that "Dr. Losonczy was aware of Plaintiff's age" and that "[t]he agency preferred to hire younger applicants," even when taken together with the fact that two candidates under the age of 40 were ultimately hired, is insufficient evidence for the decision to give rise to an inference of discrimination.  Pl.'s Rule 56.1 Statement at ¶¶ 95, 97; *Meyer*, 174 F. Supp. 3d at 689 ("Plaintiff's mere subjective belief that she was discriminated against does not sustain a discrimination claim." (internal quotations marks and citation omitted)).  Considering the totality of the evidence, plaintiff has not met her burden of establishing a *prima facie* claim of age discrimination and has not offered any evidence that raises a genuine issue of material fact as to whether defendant's failure to hire her gave rise to an inference of age discrimination.

## 2.    Retaliation

Plaintiff meets the first three requirements of the four-element test to establish a *prima facie* retaliation claim.

### a)    Protected Activity

She participated in protected activity on numerous occasions: as of the date of plaintiff's original complaint, she had previously filed at least eight EEO complaints against various branches of the VA and named Dr. Kaune and Dr. Losonczy specifically in several of these complaints.  Pl.'s Rule 56.1 Statement at ¶ 67; Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-

3.  Because a retaliation claim under the ADEA is limited to retaliation for an employee's prior claims of age discrimination, the court will consider plaintiff's previous protected activity in which she specifically complained of age discrimination as relevant.  29 U.S.C. § 623(d) (prohibiting retaliating against an applicant who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation *under this chapter*." (emphasis added)); *Gomez–Perez v. Potter*, 553 U.S. 474 (2008) (permitting actions under the ADEA based on prior complaints of age discrimination); *Gavurnik v. Home Properties, L.P.*, No. 16-CV-633, 2017 WL 25378, at *6 (E.D. Pa. Jan. 3, 2017) ("In order to satisfy prong one of an ADEA retaliation claim, [plaintiff's] protected activity must reference age."); *see also* Hr'g Tr. at 17:18-18:8.  Even if the court were to consider all of plaintiff's prior complaints asserted on bases other than age discrimination, plaintiff would not meet her burden of establishing a *prima facie* claim of retaliation.  All of her other non-age discrimination based EEO complaints preceded the two complaints that alleged age discrimination, and as is discussed below, her two latest EEO complaints lack a temporal nexus with the adverse action now complained of.

Twice before filing the instant complaint, plaintiff complained of age discrimination by the VA.  In October 2003, she filed an EEO complaint, alleging harassment and a hostile work environment during her employment with the NJ-VA based on gender, religion, equal pay, and age.  Def.'s Rule 56.1 at ¶ 11; Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3.  The matter was settled and closed in February 2004.  Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3.  In June 2009, she filed another EEO complaint, alleging that the NY-VA discriminated against her by retracting an offer of employment based on her religion, age, and prior protected activity.  *Id.* The matter was eventually litigated in this district and dismissed in September 2016.  *See Meyer*, 2016 U.S. Dist. LEXIS 138418 (granting summary judgment for defendant).  *See also* Def.'s

Summ. J. Mot. at 8 ("Defendant does not dispute that Plaintiff engaged in prior protected activity under the ADEA.").

### b) Knowledge of Protected Activity

Plaintiff has established that defendant was generally aware of plaintiff's protected prior activity. The Court of Appeals for the Second Circuit has confirmed that to satisfy the knowledge requirement of a *prima facie* retaliation claim, nothing more "than general corporate knowledge that the plaintiff has engaged in a protected activity" is necessary. *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (internal quotation marks and citation omitted). Plaintiff has met that requirement: she previously initiated two EEO complaints against the VA on the basis of age discrimination, one of which was against the employer in the instant case, the VA-NJ. Singh Decl. at Ex. T, ECF No. 26-3; *Chan*, 63 F. Supp. 3d at 295 ("To constitute protected activity, the plaintiff's conduct must have put the employer on notice that the plaintiff believed that discrimination was occurring. . . . A defendant will be considered to have been put on notice in circumstances where the plaintiff filed a formal complaint with an administrative agency." (internal quotation marks and citations omitted)). Defendant was aware of plaintiff's prior protected activity, even if the members of the hiring panel did not have personal knowledge of these proceedings.

### c) Adverse Employment Action

As discussed *supra*, in section V.A.1, defendant took an adverse employment action against plaintiff in failing to hire her. *See Galabya*, 202 F.3d at 640.

### d) Causal Connection

Plaintiff fails to establish causation between her prior protected activity and defendant's failure to hire her. Proof of causation can be established either "(1) indirectly, by showing that

the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (internal quotation marks and citation omitted).

Plaintiff has failed to provide direct evidence of defendant's retaliatory animus, and she does not show through indirect evidence that employees who were similarly situated were disparately treated. The most plaintiff offers is that two employees under the age of 40 filled the vacancies, but both of those doctors – in addition to all of the candidates interviewed – were board certified. To show the disparate treatment of a "purportedly similarly situated employee . . . such an employee must be similarly situated in all *material* respects—not in all respects. . . . [T]hose [other] employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasis in original) (footnote omitted) (quotation marks and citations omitted). Defendant preferred to fill the position with doctors who have a significant qualification that plaintiff lacks; thus plaintiff was not similarly situated to the board certified candidates hired in all material ways. *See, e.g.*, *Jackson v. Buffalo Mun. Hous. Auth.*, 916 N.Y.S.2d 437, 438 (N.Y. App. Div. 2011) (taking into account an individual's qualifications for a position when determining whether she was similarly situated to plaintiffs for the purposes of an employment discrimination claim); *Chan v. NYU Downtown Hosp.*, No. 03-CV-3003, 2006 WL 345853, at *4 (S.D.N.Y. Feb. 14, 2006) (considering "similarly situated" to include a comparison of "responsibilities, tenure, experience, background, qualifications, education, etc."); *see also supra*, section II (discussing the benefits board certification can provide to patients, doctors, and employers); Hr'g Tr. at 8:8-9:20.

Nor is plaintiff able to rely on the timing of the adverse employment action in relation to her protected activity to indirectly show causation. When a retaliatory claim is asserted against plaintiff's current employer, courts "generally analyze the time period between a plaintiff's protected activity and the adverse employment action because in the vast majority of cases, that is the operative time period for ascertaining retaliatory intent and causation." *Meyer*, 2016 U.S. Dist. LEXIS 100528, at *24. But in "a case where the protected activity was directed against a former employer . . . the operative time period for purposes of divining intent and circumstantial evidence of causation is the time that elapsed between the new employer (or prospective employer) *learning about* the plaintiff's protected activity and the adverse employment action." *Id.* at *25 (emphasis in original). The two previous complaints of age discrimination plaintiff made that form the basis of her instant retaliation claim must be analyzed under these two standards.

Relevant for her October 2003 complaint against the NJ-VA is the time that elapsed between the filing of the complaint and the adverse employment action: while the NJ-VA is technically plaintiff's former employer (plaintiff left in 2004), it is treated as a current employer for the causation test. The past complaint and instant complaint are asserted against the same employer. Considering the NJ-VA as a former employer would belie the rationale underlying the "former employer" standard, which is that unlike a former employer, a current employer "presumably receives notice of the protected activity contemporaneous with the activity itself." *Id.* at *24. In the instant case, if the NJ-VA hiring panel was aware of plaintiff's prior protected activity when making its hiring decisions, the members of the panel would have learned of the prior protected activity in October 2003, contemporaneously with the EEO filing against that employer.

The time elapsed between the filing of the EEO complaint against the NJ-VA (October 2003) and the failure to hire in the instant case (early 2012) was at least eight years. Singh Decl. at Ex. T, Aug. 3, 2016, ECF No. 26-3; Singh Decl. at Ex. F, Aug. 3, 2016, ECF No. 26-1; Def.'s Rule 56.1 Statement at ¶ 40. To constitute causation, the protected activity must be "*closely followed in time* by the adverse action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127-28 (2d Cir. 2013) (emphasis added).

There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) (internal quotation marks and citation omitted). Each temporal analysis must be made within the context of a case, but the Court of Appeals for the Second Circuit has determined that seven months is not too long to establish a causal relationship, while fifteen months or two years is too long. *Summa*, 708 F.3d at 127-29 (2d Cir. 2013) (emphasis added); *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 229-30 (E.D.N.Y. 2014) (citations omitted). A gap of eight years is too great "to establish causation based on the temporal proximity of the protected activity and the adverse action." *Meyer*, 2016 U.S. Dist. LEXIS 100528, at *23-24 (citing *Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (plaintiff's termination "occurred almost one year after her complaint of discrimination, thus undermining any causal nexus based on temporal proximity" (citation omitted)) and *John v. Kingsbrook Jewish Med. Ctr./Rutland Nursing Home*, No. 11-CV-3624, 2014 WL 1236804, at *20 (E.D.N.Y. Mar. 25, 2014) (plaintiff's suspension and termination two years after initial complaint and ten months after last complaint were "too attenuated in this instance to establish that her termination was in retaliation for any protected activity" (citations omitted))); *Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 182 (E.D.N.Y. 2014) ("Here, the passage of approximately six months between plaintiff's

complaint and the alleged adverse action does not allow for an inference of causation, especially where plaintiff has not alleged any other facts from which retaliation can be inferred. As a result, plaintiff has not alleged a plausible ADEA retaliation claim."), *aff'd*, 594 F. App'x 53 (2d Cir. 2015).

The age discrimination complaint plaintiff filed in June 2009 against the NY-VA must be analyzed under the other causation standard. Because that complaint was against an employer other than the one named in the instant matter, the "former employer" standard must be used to determine the time that elapsed between the NJ-VA learning about the plaintiff's protected activity against the NY-VA and the adverse employment action. *Meyer*, 2016 U.S. Dist. LEXIS 100528, at *24. It is not clear from the record what this time period was; plaintiff has failed to offer any concrete evidence that the reviewing panel and Dr. Losonczy were aware of plaintiff's 2009 age discrimination claim against the NY-VA.

Unlike the second knowledge prong of the *prima facie* analysis, a plaintiff cannot rely on "mere corporate knowledge" to establish the fourth causation prong of the four-part test. *Kwan v. Andalex Grp. LLC*, 737 F. 3d 834, 844 n.4 (2d Cir. 2013). Dr. Kaune stated in her EEOC declaration for the instant case that she was "aware of some of the complainant's prior EEO filings. She actually named me as a responsible management official on a couple of occasions." Singh Decl. at Ex. R, Aug. 3, 2016, ECF No. 26-3. Dr. Losonczy recalled that plaintiff had addressed some of her previous complaints directly to him, either orally or through letters. *See, e.g.*, Wolin Decl. at Ex. 10, Sept. 21, 2016, ECF No. 32-10 (September 2000 letter addressed to Dr. Losonczy); Wolin Decl. at Ex. 12, Sept. 21, 2016, ECF No. 32-12 (June 2002 letter addressed to Dr. Losonczy); Wolin Decl. at Ex. 15, Sept. 21, 2016, ECF No. 32-15 at 83:2-84:22. Neither Dr. Kaune nor Dr. Loszonzcy were named or involved in the 2009 complaint

against the NY-VA, and neither indicated that they were aware of that specific complaint. Their recollections about plaintiff's general past activity is insufficient to show awareness of the protected prior activity involving allegations of age discrimination.

Plaintiff has failed to establish through indirect or direct evidence that defendant failed to hire her due to her past complaints of age discrimination, and has therefore failed to meet her burden of establishing a *prima facie* case of retaliation. Viewing the facts in a light most favorable to plaintiff, the record does not support any indication that defendant failed to hire plaintiff for reasons motivated by age discrimination or retaliation for plaintiff's prior protected activity.

### B.     Defendant's Legitimate, Non-Discriminatory Reason

Even assuming that plaintiff met her burden of establishing a *prima facie* inference of discrimination or retaliation, which she did not, defendant was able to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Hicks*, 593 F.3d at 164 (internal quotation marks and citation omitted). This "is not a particularly steep hurdle" because "[i]t is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory." *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005).

"[E]mployers 'ha[ve] discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.'" *Meyer*, 174 F. Supp. at 692 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 249 (1981)). "[T]he court must respect the employer's unfettered discretion to choose among qualified candidates." *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1182 (D.C. Cir. 1996); *see also Brierly*, 359 F. Supp. at 291 ("Federal courts do not have a roving commission to review business judgments . . . and may not

sit as super personnel departments, assessing the merits—or even the rationality—of employers'

non-discriminatory business decisions." (internal quotation marks and citations omitted)).

Interviewing and hiring a candidate with superior qualifications to plaintiff is a

legitimate, non-discriminatory reason for failing to hire plaintiff. *See Meyer*, 174 F. Supp. 3d at

692 (finding that defendant had met its burden of establishing a legitimate, non-discriminatory

reason for not hiring plaintiff where defendant established that the individuals hired had superior

qualifications); *see also Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 271-72 (E.D.N.Y.

2013) (finding that "superior qualifications" of one candidate are a legitimate, non-

discriminatory reason for failing to hire plaintiff); *Andretta v. Napolitano*, 922 F. Supp. 2d 411,

418 (E.D.N.Y. 2013) ("By presenting evidence of a legitimate, merit-based review process,

which resulted in the selection of three well qualified candidates, Defendant has satisfied its

burden in the second phase of the *McDonnell* test."); *Antunes v. Putnam/N. Westchester Bd. of*

*Coop. Educ. Servs.*, No. 09-CV-3063, 2011 WL 1990872, at *7 (S.D.N.Y. May 19, 2011)

(finding that in hiring individuals with "superior qualifications," defendants had established a

legitimate, non-discriminatory reason for not hiring plaintiff). Board certification has

specifically been recognized as a "superior qualification." *See Meyer*, 174 F. Supp. at 692; *see*

*also Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 795 (7th Cir. 2006) ("[Defendant's]

requirement that a neurosurgeon with active staff membership be board certified is a legitimate

and non-discriminatory reason for denying [plaintiff] active status.").

When reviewing applications for the vacant position, the individuals involved in the

hiring decision here determined that they preferred a board certified psychiatrist to fill the

vacancy. *See* Def.'s Rule 56.1 Statement at ¶¶ 26-28; Hr'g Tr. at 5:23-9:19. The record reflects

that defendant preferred to hire board certified candidates because they have passed a rigorous

examination process, are recognized as experts in their field, and are generally considered to have superior qualifications. All of the psychiatrists defendants interviewed and who received offers of employment were board certified. Def.'s Rule 56.1 Statement at ¶¶ 28, 36-37, 40-41; Hr'g Tr. at 5:23-9:19; *see also supra*, section II. This superior qualification of the candidates interviewed and selected for the vacancy is sufficient to establish a legitimate, non-discriminatory reason for defendant's failure to hire plaintiff.

### C. Pretext

Assuming that plaintiff stated a *prima facie* claim, she would not be able to demonstrate that defendant's legitimate, non-discriminatory explanation for its hiring decision was a pretext.

To establish pretext, plaintiff must produce evidence showing that "evidence that would permit a rational factfinder to infer that the adverse employment action was actually motivated, in whole or in part, by discrimination." *Meyer*, 174 F. Supp. 3d at 692-93 (internal quotation marks, alterations, and citation omitted). "The plaintiff retains the ultimate burden of persuasion, but summary judgment is appropriate only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Hernandez*, 100 F. Supp. 3d at 264 (internal quotation marks, alterations, and citation omitted).

Nothing in the record would allow a rational factfinder to determine that defendant's explanation for hiring board certified candidates instead of plaintiff was a pretext for a discriminatory motive. Other than the issue of board certification, plaintiff has been unable to point to any evidence in the record that, but for plaintiff's age and prior protected activity, plaintiff would have been selected for the position. Dr. Kaune even stated in her EEOC hearing declaration for the instant case that "had [plaintiff] been board certified, I would not have been receptive to her returning to the [NJ-VA] as a psychiatrist and would not have recommended

her," because plaintiff had previously made threatening remarks to her and had consistently low performance ratings while at the NJ-VA. Singh Decl. at Ex. R, Aug. 3, 2016, ECF No. 26-3.

Defendants were within their right to determine that they preferred a board certified candidate for the position, and then interviewed and hired only applicants who possessed that qualification. Choosing only board certified applicants is consistent with defendant's assertion that a board certified psychiatrist was preferred for the position, even if the qualification was not listed as a requirement. *Meyer*, 174 F. Supp. 3d at 693 ("[T]he fact that Board Certification might not have been a requirement for the positions for which Plaintiff applied . . . does not undercut Defendant[']s valuation of such certification as demonstrating superior qualifications, nor does it permit an inference of discrimination, as Plaintiff has provided no nexus between Board Certification and [her protected characteristic].").

There is no material issue of fact as to whether defendant's asserted reason for its failure to hire plaintiff is pretext, and whether defendant was motivated by plaintiff's age and prior protected activity. Plaintiff has failed to produce any evidence that defendant did anything other than exercise its appropriate business judgment to hire candidates with an objectively superior qualification. *Crawford v. Dep't of Investigation*, 324 F. App'x 139, 142 (2d Cir. 2009) ("If the record conclusively reveals a nondiscriminatory reason for the employer's decision, or if the plaintiff creates only a weak issue of fact as to pretext and there is abundant and uncontroverted independent evidence that no discrimination has occurred, then the employer is entitled to judgment as a matter of law." (internal quotation marks, alterations, and citations omitted)).

## VI.    Conclusion

Defendant's motion for summary judgment is granted. The case is dismissed. No costs or disbursements are granted.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: March 17, 2017
Brooklyn, New York